UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BENJAMIN J. JOHNSON, | * | |
| | * | |
| Plaintiff, Defendant-in-Counterclaim, | * | |
| | * | |
| v. | * | Civil Action No. 08-10003-JLT |
| | * | |
| JPMORGAN CHASE BANK, N.A., | * | |
| | * | |
| Plaintiff-in-Counterclaim, | * | |

MEMORANDUM

May 3, 2011

TAURO, J.

I.      Introduction

Benjamin J. Johnson, Plaintiff and Defendant-in-Counterclaim ("Plaintiff") brought a number of claims against JPMorgan Chase Bank, N.A., Plaintiff-in-Counterclaim ("Chase"),[1] for damages and attorneys fees stemming from a dispute over the rescission of a mortgage transaction.[2]  These claims have since been disposed of, leaving the enforceability of a 2006 mortgage as the sole remaining question.[3]  Presently at issue are Chase's Motion for Summary Judgment on Counterclaim [#30] and Plaintiff's Cross Motion for Summary Judgment on

---

[1] Plaintiff originally sued Washington Mutual Bank.  The U.S. Office of Thrift Supervision placed Washington Mutual Bank in the receivership of the Federal Deposit Insurance Corporation ("FDIC").  The FDIC then sold the assets and some liabilities to Chase, pursuant to a Purchase and Assumption Agreement.  Chase intervened as Plaintiff-in-Counterclaim in place of Washington Mutual.  The FDIC intervened as Defendant in place of Washington Mutual Bank and Chase, but has since settled with Plaintiff and was dismissed with prejudice.  The only remaining parties in the present case are Chase and Plaintiff.

[2] See Am. Compl. ¶¶ 18–27 [#4].

[3] Order Dismissal ¶¶ 1–3 [#51].

1

Counterclaim [#46, incorporated in #35]. For the following reasons, Chase's <u>Motion for Summary Judgment</u> is ALLOWED IN PART and DENIED IN PART, and Plaintiff's <u>Cross Motion for Summary Judgment</u> is DENIED.

II. <u>Background</u>[4]

On July 24, 2006, Plaintiff granted to Washington Mutual Bank ("WaMu") a mortgage (the "2006 Mortgage") on a property located at 19 Aborn Street, Salem, Massachusetts (the "Property").[5] On July 26, 2007, Plaintiff executed two promissory notes and two mortgages (the "2007 Mortgages") for the purpose of paying off the 2006 Mortgage.[6] Plaintiff mailed notices of the right to rescind the 2007 Mortgages on July 28, 2007 and Defendant received the notices two days later.[7]

Beginning on August 1, 2007, WaMu was in contact with Plaintiff concerning Plaintiff's notices of rescission, which WaMu was unable to locate.[8] On August 8, 2007, while WaMu was

---

[4] This court presents these facts in the light most favorable to the party that does not prevail on summary judgment, here, Plaintiff. See <u>Alliance of Auto. Mfrs. v. Gwadosky</u>, 430 F.3d 30, 34 (1st Cir. 2005) ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof." (citation omitted)).

[5] Statement Material Facts Which There Is No Genuine Issue Supp. Mot. Def. JPMorgan Chase Bank, N.A., Summ. J. ¶ 2 [#32] [hereinafter Facts]; Resp. Statement Material Facts, 1 [#36] [hereinafter Resp. Facts]. The 2006 Mortgage was to secure repayment of Plaintiff's promissory note (the "2006 Note") in favor of WaMu. Facts ¶¶ 1–2 [#32].

[6] Facts ¶¶ 3, 4 [#32]; Resp. Facts, 1 [#36].

[7] Facts ¶¶ 5, 6 [#32]; Resp. Facts, 1 [#36].

[8] Facts ¶¶ 7, 10 [#32]; Resp. Facts, 1 [#36].

2

looking for the notices, the 2006 Mortgage was discharged.[9]

WaMu interacted regularly with Plaintiff over the following three weeks,[10] eventually offering a $5,000 credit in lieu of rescission on August 23, 2007.[11] Plaintiff rejected this offer on August 27, 2007.[12] He tendered to WaMu all the checks he had been provided as part of the 2007 Mortgage and a personal check for an amount of funds that had been wired to his account.[13]

On August 28, 2007, Plaintiff e-mailed WaMu and informed it that he expected the 2006 Mortgage to be reinstated.[14] Plaintiff claims that he subsequently asked WaMu if he should resume payments on the 2006 Mortgage and received no response.[15]

The settlement agent, Apex Title ("Apex") and WaMu entered into a dispute about the proper procedure to effect the rescission.[16] During this time Apex refused to return the funds on which Plaintiff's checks had been drawn.[17] This dispute ended in December 2007, when WaMu mailed Plaintiff's checks to Apex.[18] On January 10, 2008, Apex (via an escrow agent) sent a new

---

[9] Facts ¶ 9 [#32]; Resp. Facts, 1 [#36].

[10] See Facts ¶ 8 [#32]; Resp. Facts, 1 [#36].

[11] Facts ¶ 11 [#32]; Resp. Facts, 1 [#36].

[12] Facts ¶ 12 [#32]; Resp. Facts, 1 [#36].

[13] Facts ¶ 13 [#32]; Resp. Facts, 1 [#36].

[14] Facts ¶ 18 [#32]; Resp. Facts, 1 [#36].

[15] Opp'n Mot. Summ. J. & Cross Mot. Summ. J., 10 [#35] [hereinafter Opp'n Mot. Summ. J.].

[16] See Facts ¶ 17 [#32]; Resp. Facts, 1 [#36].

[17] Facts ¶ 17 [#32]; Resp. Facts, 1 [#36].

[18] Facts ¶ 20 [#32]; Resp. Facts, 1 [#36].

check to WaMu for the funds in question.[19] Six days later WaMu discharged the 2007 Mortgages.[20]

Plaintiff has not made any payments on the 2006 Mortgage since July 2007.[21]

III. Discussion

The Truth in Lending Act ("TILA")[22] sets forth a specific procedure for rescission: (1) the borrower notifies the creditor of his intent to rescind; (2) within twenty days after receipt of a notice of rescission, the creditor returns "any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction;"[23] (3) the borrower tenders property to the creditor, which the creditor had delivered to the borrower; and (4) if the creditor does not take possession of the property within twenty days after the borrower's tender, "ownership of the property vests in the obligor without obligation on his part to pay for it."[24]

Plaintiff contends that TILA allows the borrower to tender any property received from the creditor back to the creditor and that the 2006 Mortgage counts as such property.[25] Plaintiff contends that when he informed WaMu that he expected the 2006 Mortgage to be reinstated, he

---

[19] See Facts ¶¶ 19, 21 [#32]; Resp. Facts, 1 [#36].

[20] Facts ¶ 22 [#32]; Resp. Facts, 1 [#36].

[21] Facts ¶ 23 [#32]; Resp. Facts, 1 [#36]. Combining the 2006 Note and Mortgage, there is an outstanding balance of $290,217.25. Facts ¶ 24 [#32].

[22] 15 U.S.C. § 1635 et seq.

[23] 15 U.S.C. § 1635(b).

[24] Id.

[25] Opp'n Mot. Summ. J., 14 [#35].

tendered the mortgage back to WaMu.[26] Plaintiff asserts that by failing to respond to Plaintiff's questions about resuming payments, WaMu failed to accept Plaintiff's tender within the statutorily required twenty days.[27] Accordingly, Plaintiff argues that TILA voids the 2006 Mortgage, leaving him with no obligation in connection with the 2006 Mortgage.[28] Chase disagrees, arguing that the duty to tender relates to the new advance secured from the 2007 Mortgage, not the 2006 Mortgage.[29]

Plaintiff's argument fails as a matter of law. Although TILA is silent on what may be considered "property" for the purpose of rescission, Regulation Z[30] provides that the right of rescission applies in refinancings only "to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation."[31] Rescission is therefore only available for the "new money" portion of the loan proceeds and has nothing to do with prior obligations.[32]

---

[26] Opp'n Mot. Summ. J., 10 [#35].

[27] Opp'n Mot. Summ. J., 10 [#35].

[28] Opp'n Mot. Summ. J., 19–20 [#35].

[29] Mem. Law Supp. Opp'n JPMorgan Chase Bank Pl./Def. Counterclaim's Cross-Mot. Summ. J., 5–6 [#48].

[30] Regulation Z is promulgated by the Board of Directors of the Federal Reserve System pursuant to its authority under 15 U.S.C. § 1604(a) to carry out the purposes of TILA.

[31] 12 C.F.R. § 226.23(f)(2). The Official Staff Commentary confirms this view. See 12 C.F.R. pt. 226, Supp. I, § 226.23(f)-4 at 688 (2009) ("If the refinancing involves a new advance of money, the amount of the new advance is rescindable.").

[32] This conclusion is further buttressed by a First Circuit case. In Santos-Rodriguez v. Doral Mortgage Corp., 485 F.3d 12 (1st Cir. 2007), the court analyzed whether a creditor's form was misleading because it outlined the effects of rescission of an original loan and not a same-lender refinance loan. Id. at 16–18. The plaintiffs complained that the form did not disclose that,

Accordingly, Plaintiff's 2006 Mortgage remained unaffected by the rescission of the 2007 Mortgage and WaMu retained a valid security interest in the Property. Plaintiff therefore could not tender the 2006 Mortgage, which he remained obligated to satisfy. Because Plaintiff could not tender this obligation, his argument that he has the right to keep the property free and clear of the 2006 Mortgage is erroneous. Furthermore, because the 2006 Mortgage could not be tendered back to WaMu and because the funds for its discharge were to be provided by the rescinded 2007 Mortgage, this court holds that the 2006 Mortgage was erroneously discharged and is enforceable.[33]

Plaintiff also argues that WaMu failed to begin the rescission process within the statutorily required twenty days because initial discussions concerned WaMu's failure to locate the notices of rescission, not rescission itself.[34] Chase argues that these discussions concerning the location of

---

in a rescission of a same-lender refinance, the original loan is not cancelled, the creditor retains a security interest in the property under the original loan, and the consumer "reverts" to paying off that original loan. Id. at 16. In discussing whether the plaintiffs were misled by the use of the wrong form, the court made clear that rescission of a same-lender refinance loan does not rescind the original mortgage. Id. at 17–18.

[33] Massachusetts common law provides that, under the doctrine of unjust enrichment, a mortgage that is accidentally discharged may be reinstated. See, e.g., Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1236 (1st Cir. 1996) ("'[W]here a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position which the parties intended it to occupy, if the rights of the intervening lienholders have not been affected.'" (quoting N. Easton Co-op. Bank v. MacLean, 300 Mass. 285, 292 (1938)) (remaining citations omitted)).

[34] Opp'n Mot. Summ. J., 3–4 [#35]. The relevant part of the statute provides that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, <u>and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction</u>." 15 U.S.C. § 1635(b) (emphasis added). Plaintiff's dispute appears to involve only

6

the notices constitute a "beginning" sufficient to satisfy the statute.[35] This court agrees with Chase.

The Official Staff Commentary to Regulation Z, which the Supreme Court has declared dispositive unless demonstrably irrational,[36] explains that the "20-day period for the creditor's action refers to the time within which the creditor must begin the process. It does not require all necessary steps to have been completed within that time."[37] This court holds that the numerous communications between Plaintiff and WaMu concerning the notice of rescission constitute a beginning to the process sufficient to satisfy the statute.

Finally, this court notes that the foregoing discussion concerned Chase's counterclaim for a declaratory judgment on the validity of the 2006 Mortgage.[38] In its Memorandum, Chase summarily references a counterclaim for breach of contract but does not argue the elements of that claim.[39] Plaintiff fails to respond specifically to this counterclaim, arguing only the validity of the 2006 Mortgage. This court therefore reserves judgment on Chase's counterclaim for breach

---

the last clause, which requires a creditor to take action to terminate the security interest.

[35] Mem. Supp. Opp'n Cross-Mot. Summ. J., 4 [#48].

[36] Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing [TILA or its Regulations] should be dispositive.").

[37] 12 C.F.R. pt. 226, Supp. I, § 226.23(d)(2)-3 at 687 (2009).

[38] See Answer & Countercl. Washington Mutual Bank, 9–10 [#6].

[39] See Mem. Law Supp. Mot. Summ. J., 2, 20 [#31] (generally making note of the counterclaim, asking for judgment on the breach of contract count because it "does not appear that Plaintiff has any defense to the breach of contract count," and saying that Plaintiff has allegedly breached the 2006 Note).

of contract pending further filing by the Parties.

IV.     Conclusion

For the foregoing reasons, Chase's Motion for Summary Judgment on Counterclaim [#30] is ALLOWED IN PART and DENIED IN PART, and Plaintiff's Cross Motion for Summary Judgment on Counterclaim [#46, incorporated in #35] is DENIED.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge